IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 09-180 |
| | ) | |
| BONNIE GARNDER | ) | [Submitted *Ex Parte* and UNDER SEAL] |

## GOVERNMENT'S WITNESS LIST

AND NOW comes the United States of America, through its undersigned counsel, and pursuant to the Court's Order of December 21, 2012, respectfully submits *ex parte* and under seal its witness list together with brief summaries of their expected testimony.

During the course of the trial of this matter the government intends to prove that the defendant, Bonnie Gardner, participated in Mail and Wire Fraud Conspiracy and a Mail and Wire scheme. Gardner was associated with several entities that are collectively referred to as East Haven, which were owned and operated by Frank Guzik. East Haven was in the business of purchasing distressed properties, improving the properties, and then selling the properties.

As part of the business, Guzik and Gardner solicited investments from close to a hundred investors who invested more than $15 million, nearly of all of which has been lost. Guzik and Gardner solicited the investments through a series of fraudulent representations that are outlined in the Superseding Indictment. Guzik and Gardner also provided the investors with a number of fraudulent documents in support of the scheme. Eventually, East Haven became an enormous Ponzi scheme that collapsed in March 2008 when Guzik stole hundreds of thousands of dollars from East Haven accounts and fled the jurisdiction. His whereabouts remain unknown.

Another aspect of the scheme related to "straw purchases" of properties. A "straw purchase" is represented to the lenders financing the transactions as a legitimate sale from a seller of the

property to an independent third-party purchaser of the property. In reality, however, the purchaser is not really purchasing the property. Guzik and Gardner arranged to "sell" approximately twenty of East Haven's properties to straw purchasers who agreed to allows Guzik and Gardner to use their names to purchase the properties, which allowed East Haven to get the proceeds from the sales of the properties. Guzik and Gardner, even after the "sale", would pay the mortgage payments and the utility bills associated with the properties. The straw purchasers would also received between $2,000 to $3,000 from Guzik and Gardner for the purchases.

Lenders funded the straw purchases based on a number of false representations. First, there were provided sales agreement reflecting an actual agreed to sell and purchase the properties. Second, Guzik and Gardner provided false information to the lenders about the purchasers' financial condition, including their income and assets. And finally, the lenders were provided false settlement statements the falsely reflected that the purchasers made substantial payment of their own funds at the closing when, in fact, that money came from East Haven.

The witnesses the government intends to present fall into a number of categories outlined below:

1. Investor Victims

The Government will call the following fraud victim as witnesses at trial as evidence supporting the charged substantive mail fraud counts: Junhai Ou or Liping Qian(Ct. 7); Judith Curry(Ct. 8); Ching lin Chow (Ct.9); James Sisak (Ct. 10); Xiaoli Wang (Ct.11); Wayne Stiles (Cts. 12 & 15); Terry Wadsworth (Ct.13) and Tenren Hsu (Ct. 14). The Government may also call other investor victims as intrinsic evidence of the fraud: Victor or Judy Bonatch; John Carleo; Meisheng

Chen; Victoria Gordon; Gary Han; John Polosky; Chaoufu Shi or Bayou Sun; James Simon; Lori Concelman; Theodore Stern; Naomi Tatar; Dong Sheng Wang, Geraldine Blaney, Victoria Gordon, Fei Jiang, Ying Fook Moy, Yingguo Peng, Allison Serakowski, Theodore Stern, Raymond Whiteside, William Murray, Hugh Kovalsky, Earlene Halliwell, Ernestine Alberts, Marvin Bailey, Patricia Beard, Jie Chen, Yaozhong Chen, Thomas Coffman, Don Delfrate, Andrew Dennis, Richard Dennis, Lawrence Dwojak, Rentian Feng, Gary Halliwell, William Hutchison, Robert Jameson, Lenny Mack, John Matthews, Susan Newmeyer, Barbara Price, Qiliang Chen, Raymond Reed, Martin Reutebuch, Craig Seifert, Gerald Thomas, Christian Weller, Eti Zangrando, Elsa Bonfigli, Judith Foley, James Simon, James and Sarah McGinnis, Jack and Lenny Mack and Christian and Tonya Weller.

All the victims were persons personally solicited between 2004 and 2008 by Frank Guzik and/or Bonnie Gardner to invest their money in real estate in Western Pennsylvania, and in exchange were to receive substantial earnings on their investments. In summary, they will testify regarding their introduction to East Haven, Guzik and/or Gardner, representations made by Guzik and Gardner which induced them to invest with East Haven; and, the investments offered by East Haven including investments secured by promissory notes and mortgages on properties. With the aid of FRE 1001 Summaries, the victims will testify about documents relative to their specific investments including dividend or interest checks; Investment Illustrations, and correspondence or communications from East Haven, Guzik or Gardner during the investment period which purported to show real earnings on their investments. However, the victim investors will testify that they later learned how they were defrauded by Guzik and Gardner regarding their investments, including that Guzik and Gardner failed to satisfy or record the satisfaction notices on the properties; that their properties were

over-mortgaged, and often sold to "straw purchasers" and that they lost their entire investment, which cause financial hardship. The victims will testify that the false representations or material omissions induced them to invest, and that had they been fully advised about their investments, that they never would have invested their funds with East Haven.

2. Lender Victims

The government has thus far identified two witnesses who intend to testify as representations of the lender victims. They are Steve Newcomb, formerly of Argent Mortgage, and Lanisa Jenkins, formerly of Countrywide. The lender witnesses are knowledgeable about the underwriting practices and mortgage products of their respective lenders during the relevant time frame. They will all testify that, had their companies known the reality of these transactions, the loans would not have been approved. They will testify about the importance of down payments, correct sales prices, and that there be an actual transaction underpinning the transaction.

3. Straw Purchasers

The government intends to present the testimony of the straw purchasers who agreed to lend their names to East Haven for the purpose of "purchasing" properties that they were not actually purchasing. There individuals include Thomas Capria, Sean Kerrigan, Andrew Shell, Martin Stuko, and Heather Wise. These individuals will testify they did not really purchase these properties, that they did not make the payments related to the properties prior to or at the closings reflected in the settlement statements, and that East Haven and Gardner funded their bank accounts for the purposes

of creating fraudulent verifications of deposit and for payments of the "cash to close" amounts reflected on the settlement statements.

In addition, they will testify that East Haven and Gardner made the payments related to the properties after the closings. Those payments included the mortgage payments, the utility payments, the tax payments, and other expenses associated with the properties.

4. Mortgage Brokers

There were a number of mortgage brokers associated with these straw purchase transactions. Those individuals include Robert Pennington, Christine Ross, Dustin Jones, and Jonathan Stefan. Although all four individuals are potential witnesses, it is likely that the government will call only Jones and Stefan. Stefan was the mortgage broker on two of the straw purchase transactions, including the one involving Gardner herself in which she vastly overstated her income, at least as compared to the income she reported to the Internal Revenue Service. Stefen will testify that the information on the loan application came from Gardner herself.

Jones was involved as the mortgage broker on a number of the straw purchase transactions, including the ones from the counts in the Indictment. He will identify Gardner as a source of much of the false information and documents submitted to the lenders in connection with these straw purchases, including a fake letter from an accountant, forged sales agreements, and related documents. Jones will testify that Gardner was heavily involved in the process.

5. East Haven Employee Witnesses

The government intends to present the testimony of several employees who worked with Gardner and Guzik at East Haven. Renee Roman was the office manager at East Haven, and she will authenticate Gardner's signature on many of the critical documents establishing the fraud. She will describe East Haven's businesses and the roles of Guzik and Gardner. She will testify that Gardner was aware of the straw purchase transactions, and, in fact, Gardner originally made the mortgage payments related to the straw purchases before Roman took over that role.

Martin Skuta was another employee of East Haven, and he was also an investor and a straw purchaser of a property in Florida. He will testify similarly to the other straw purchasers, and she will also explain the roles of Guzik and Gardner at East Haven.

Mark Guzik also worked at East Haven doing mainly contract work, and he is Frank Guzik's brother. He will also describe Gardner's role at East Haven, which was basically to run the business. Guzik was the sales guy and the face of the company, but Gardner crunched the numbers and handled the finances of the company.

Stephanie Hebrank also worked as East Haven. She was an attorney who worked on various matters. She will testify as to the structure of East Haven and the roles of Guzik and Gardner, among others.

6. Law Enforcement Officials

The government intends to present the testimony of the two co-case agents on this case. Special Agent Carol August is employed by the Criminal Investigation Division of the Internal Revenue Service, and she is the co-case agent on the case. She has traced many of the financial

transactions in this case and will summarize many of those transactions. Postal Inspector Hayden is the other case agent on this case and he is employed by the United States Postal Inspection Service. He will also summarize records and discuss some of the investigative efforts in this case, including the search warrant of East Haven's offices, research related to whether East Haven filed mortgages, the filing of multiple mortgage on the same properties, and other aspects of the investigation.

7. Other

a. James Uziel works for the Allegheny County Real Estate Department. He will testify that there are a number of mortgages provided by East Haven to the investors as security for their investments that were not recorded.

b. David Harnish is an attorney who worked at Meyer, Unkovic and Scott during the relevant time period. As part of soliciting investors, Guzik and Gardner represented Meyer, Unkovic and Scott as an independent third party who would approve transactions, appraisals, and loans. In reality, as Harnish will testimony, Meyer, Unkovic and Scott's role in connection with the East Haven transactions was much more narrow than as represented by Guzik and Gardner.

c. Mark Powles is an accountant from Texas. There are letter from him in some of the Kerrigan loan files basically vouching for Kerrigan's income. Powles will admit that he prepared these fraudulent documents at the behest of Guzik.

d. Kathy Zatezalo was the head teller at National City Bank, where East Haven did its banking. Zatezalo was familiar with Gardner and believes that Gardner had a good understanding of the bank account balances in the various East Haven accounts.

e. Misse Marin (previously Mckown) is an individual who was solicited to purchase one of the straw properties after it had already been sold to a straw purchaser. There are a number of documents reflecting that Gardner was attempting to obtain a loan for Marin fraudulently.

The government reserves the right to call other witnesses not identified above.

                                                Respectfully submitted,

                                                DAVID J. HICKTON
                                                United States Attorney

By:    s/ Brendan T. Conway
        BRENDAN T. CONWAY
        Assistant U.S. Attorney
        US Post Office and Courthouse
        700 Grant Street
        Suite 4000
        Pittsburgh, Pennsylvania 15219
        (412) 644-3500 (Phone)
        (412) 644-5870 (Fax)
        brendan.conway@usdoj.gov
        PA I.D. 78726