IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 09-180 |
| | ) |
| BONNIE GARDNER | ) |

<u>STIPULATIONS OF THE PARTIES</u>

AND NOW comes the United States of America, through its undersigned counsel, and the defendant, through her undersigned counsel respectfully submit the following stipulations of the parties:

1. At all material times, the defendant, FRANK GUZIK, JR., ("GUZIK") operated East Haven Housing Development Company and related entities (hereinafter collectively referred to as "East Haven") involved in the purchase and rehabilitation of real estate.

2. From in or around April 2005, and continuing thereafter until in or around March 2008, in the Western District of Pennsylvania and elsewhere, GUZIK devised and implemented a scheme to defraud that involved soliciting investments into East Haven from individual investors to whom GUZIK made material misrepresentations to induce them to invest and to not withdraw their investments, including but not limited to the following:

    (a) that the investments would generate rates of returns between eight and fourteen percent;

    (b) that the investments were generating income for the investors;

    (c) that the investments would be secured by mortgages on properties;

(d) that East Haven properties sold for certain values; and

(e) that the money invested would be used to purchase and improve properties for resale.

3. It was further a part of GUZIK'S scheme and artifice to defraud that GUZIK solicited investments into East Haven from individual investors to whom GUZIK provided fraudulent documents to those investors to induce them to invest and to induce them to not withdraw their investments, including but not limited to the following:

(a) promissory notes indicating rates of return between eight and fifteen percent;

(b) investment illustrations that falsely depicted that the victims were earning substantial interest on their investments;

(c) mortgage documents on properties that East Haven allegedly owned, falsely designed to make the investors believe that East Haven would not be able to sell the properties on which they held mortgages unless the mortgages were satisfied, when, in fact, some of those mortgage documents were not filed with the appropriate local authority; and

(d) interest checks designed to lead the investors to falsely believe that the investors were earning interest in their investments.

4. It was further a part of GUZIK's scheme and artifice to defraud that GUZIK submitted and caused the submission of forged mortgage satisfactions with local authorities.

5. It was further a part of the scheme and artifice to defraud that GUZIK provided multiple investors with mortgages on the same properties, whose total purported values were significantly higher than the properties' actual resale values, designed to lead the investors to falsely believe that their investments were secure.

6. It was further a part of GUZIK'S scheme and artifice to defraud that GUZIK arranged for the sales of numerous properties that East Haven had purportedly renovated to straw purchasers to make it falsely appear to the investors that East Haven was profitable and that their investments were secure.

7. It was further a part of the scheme and artifice to defraud that GUZIK arranged for loans to finance the purchases of the properties by straw purchasers in which material misrepresentations were made to the lenders about the financial condition of the borrowers and that the borrowers made substantial down payments associated with the purchase of the properties.

8. It was further a part of the scheme and artifice to defraud that the GUZIK diverted substantial investors' funds for his personal benefit contrary to the representations he had made to the investors.

9. During the regular course of East Haven's operations and in furtherance of his scheme and artifice to defraud, GUZIK used and caused the use of interstate wires, the United States Mails, and interstate carriers in furtherance of his scheme to defraud, including but not limited to interstate wire transfers funding loans and the sending of investor statements and interest checks through the United States Mail and through the use of interstate carriers.

10. On or about the following dates, the following interstate wires were sent:

| Date | Description of Transmission |
|---|---|
| 3/29/2007 | Wire transfer of approximately $194,479.16 from the account of a lending institution located outside the Commonwealth of Pennsylvania to the PNC Bank account of the closing agent located in the Western District of Pennsylvania related to the purchase of 2295 Robert Street, Irwin, Pennsylvania |
| 4/12/2007 | Wire transfer of approximately $153,122.62 from the account of a lending institution located outside the Commonwealth of Pennsylvania to the PNC Bank account of the closing agent located in the Western District of Pennsylvania related to the purchase of 202 Terrace Court, Trafford, Pennsylvania |
| 5/31/2007 | Wire transfer of approximately $91,604.04 from the account of a lending institution located outside the Commonwealth of Pennsylvania to the PNC Bank account of the closing agent located in the Western District of Pennsylvania related to the purchase of 47 Lilmont Drive, Swissvale, Pennsylvania |

| Date | Description of Transmission |
|---|---|
| 8/10/2007 | Wire transfer of approximately $192,783.68 from the account of a lending institution located outside the Commonwealth of Pennsylvania to the PNC Bank account of the closing agent located in the Western District of Pennsylvania related to the purchase of 3237 Arapahoe Road, Bethel Park, Pennsylvania |
| 12/17/2007 | Wire transfer of approximately $217,325.56 from the account of a lending institution located outside the Commonwealth of Pennsylvania to the PNC Bank account of the closing agent located in the Western District of Pennsylvania related to the purchase of 135 Painter Street, Trafford, Pennsylvania |

11. On or about the following dates, the following items were sent through the United States Mail:

| Date | Description of Mailing |
|---|---|
| 6/1/2007 | Investment Illustration for individuals known to the grand jury as Junhai Ou and Liping Qian |
| 11/1/2007 | Investment Illustration for individuals known to the grand jury as Louis J. Curry and Judith N. Curry |
| 12/1/2007 | Investment Illustration for individuals known to the grand jury as Ching Lin Chow and Lin Chow |
| 12/1/2007 | Investment Illustration for an individual known to the grand jury as James Sisak |
| 12/1/2007 | Investment Illustration for individuals known to the grand jury as Xiaoli Wang |
| 12/1/2007 | Investment Illustration for individuals known to the grand jury as Wayne L. Stiles and Darlene J. Stiles |

| Date | Description of Mailing |
|---|---|
| 2/1/2008 | Investment Illustration for an individual known to the grand jury as Terry Wadsworth |

12. On or about the following dates, the following items were sent through the DHL, a commercial interstate carrier:

| DATE | DESCRIPTION OF MAILING |
|---|---|
| 11/8/2007 | East Haven Housing Development check number 1111 payable to Tenren Hsu in the approximate amount of $2,041.75 |
| 2/7/2008 | Letter from the defendant, BONNIE GARDNER, to Wayne Stiles enclosing a Note |

13. On or about March 14, 2008, after stealing hundreds of thousands of dollars from various bank accounts associated with East Haven, GUZIK fled the jurisdiction and his current whereabouts are unknown.

                              Respectfully submitted,

                              DAVID J. HICKTON
                              United States Attorney

By:  s/ Brendan T. Conway
     BRENDAN T. CONWAY
     Assistant U.S. Attorney
     US Post Office and Courthouse
     700 Grant Street
     Suite 4000
     Pittsburgh, Pennsylvania 15219
     (412) 644-3500 (Phone)
     (412) 644-5870 (Fax)
     brendan.conway@usdoj.gov
     PA I.D. 78726